**DUNN LAW FIRM**
Adam C. Dunn, #10926
110 West Tabernacle
St. George, Utah 84770
Telephone: (435) 628-5405
Fax: (435) 628-4145
acdunn@dunnfirm.com
*Attorneys for Jodi Hildebrandt*
*& Connexions Classroom, LLC*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE STATE OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MICHAEL ROBERT TILLEMAN,<br><br>    Plaintiff,<br><br>v.<br><br>JODI HILDEBRANDT, an individual; RUBY FRANKE, an individual; CONNEXIONS CLASSROOM, LLC, a Utah limited liability company; and MICHAL WASHBURN, an individual,<br><br>    Defendants. | **DEFENDANTS JODI HILDEBRANDT'S AND CONNEXIONS CLASSROOM, LLC'S RULE 12(b)(6) MOTION TO DISMISS**<br><br>Civil No.:  2:25-cv-00049-CMR<br><br>Magistrate Judge:  Cecilia M. Romero |

COME NOW, the Defendants, JODI HILDEBRANDT ("Hildebrandt"), an individual, and

CONNEXIONS CLASSROOM, LLC ("ConneXions"), a Utah limited liability company, by and

through their attorneys of record, Adam C. Dunn of the DUNN LAW FIRM, and hereby submit

this Motion to Dismiss (hereinafter "Motion") under Fed. R. Civ. P. 12(b)(6), as follows:

## RELIEF REQUESTED AND GROUNDS RELIED UPON

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Jodi Hildebrandt and ConneXions Classroom,

LLC (hereinafter sometimes collectively referred to as "Defendants"), respectfully ask this Court

to order the dismissal of Plaintiff Michael Robert Tilleman's (hereinafter "Plaintiff") Complaint

in its entirety as to said Defendants.

Plaintiff institutes this civil action under the provisions of the Racketeer Influenced and

Corrupt Organizations Act (RICO) and under Utah common law for fraudulent nondisclosure or

concealment and negligent nondisclosure. His civil RICO claims stand on assertions that Defendants purportedly engaged in racketeering activities through wire fraud as specified under 18 U.S.C. § 1961(1)(B) in connection with 18 U.S.C. § 1343[1]. His allegations under non-disclosure are that Defendants did not disclose their fraudulent enterprise. Regardless of the Plaintiff's characterizations, at the core of the Complaint, the Plaintiff basically asserts that: (a) the Plaintiff's ex-wife abused his child[2] and caused him difficulty; (b) Hildebrandt abused two children[3] unrelated to Plaintiff; (c) therefore Hildebrandt should be liable to Plaintiff for his ex-wife's actions. In spite of the Plaintiff admitting at ¶222 of the Complaint that Hildebrandt never met Plaintiff or spoke to him, and in spite of him feeling in 2016 that his wife was leading him into a cult (at ¶208 of the Complaint), the Plaintiff does not show a proximate cause of his damage that is due to a predicate act and thus his RICO claims fail as a matter of law.

Indeed, this case against Defendants should be dismissed because the Complaint contains no plausible showing that a RICO predicate offense was committed by Defendants against Plaintiff, or that such a predicate offense was the direct or proximate cause of his injuries. "Our precedent makes clear ... that the compensable injury flowing from a [RICO] violation ... necessarily is the

---

[1] "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

[2] In the appellate court opinion cited at ¶15 of the Complaint (reference is *Tilleman v. Tilleman*, 2024 UT App 54, 549 P.3d 65, a copy of which is attached hereto as **Exhibit A**), the Utah Court of Appeals found that the trial court's findings were sufficiently supported by evidence that "… his 'reports of abuse were vexatious and were calculated and designed to harm Mother' is supported by the sheer number of reports Father made that never resulted in criminal charges being filed against Mother or in DCFS taking enforcement action against her. Several different agencies all investigated Mother and each investigation produced the same result. Although, as Father points out, they could not conclusively rule out the possibility that Mother abused Child, the many investigations did not produce sufficient evidence of abuse to cause intervention by the authorities. After multiple reports of such injuries to various authorities and medical professionals did not produce the desired intervention, it was not unreasonable for the court to find that Father's primary motivation in continuing to file such reports was his desire to harm Mother." *Tilleman*, 2024 UT App at ¶58.

[3] The Complaint also alleges abuse that occurred years before based on statements made by a Jessi Hildebrandt.

harm caused by [the] predicate acts." *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 13, 130 S. St. 983, 175 L. Ed. 2d 943 (2010) (internal citations omitted). Here, the purported harm caused upon Plaintiffs were not caused by predicate acts under RICO[4]. The injuries specifically enumerated by Plaintiff under the Complaint arise from the purported domestic, marital and parental abuses by his former wife Michal Washburn (referred to by Plaintiff as "Savage") which transpired between 2016 to 2020. Furthermore, the large number of allegations in the Complaint of wire fraud are mere generalizations and do not contain any factual enhancement or specificity showing the alleged fraud is the actual proximate damage of the Plaintiff. Moreover, even assuming that Plaintiff's injuries were proximately caused by a RICO predicate offense, the Complaint, taken as true, and disregarding conclusory statements, show that Plaintiff's injuries took place outside the relevant statutes of limitations, which should not be tolled.

Further, the Plaintiff has not established any duty for disclosure that would allow his common law Utah claims to withstand dismissal. In addition, those common law claims also are barred by the relevant statute of limitations because the Plaintiff has not sufficiently plead any basis for the limitations period to be tolled.

As such, based on the foregoing and all the other bases outlined herein, the Plaintiff's Complaint must be dismissed.

## SATEMENT OF RELEVANT FACTS[5]
## TAKEN AS TRUE FOR THE PURPOSES OF THIS MOTION

1. On January 22, 2025, Plaintiff filed the instant case. *See* Complaint [Dkt. 1], generally.

---

[4] The allegations of the Complaint show that his alleged injuries were not the result of purported fraud by Defendants Hildebrandt and ConneXions through the utilization of writings, signs, signals, pictures, or sounds transmitted by means of wire, radio, or television. Instead, those injuries were allegedly caused by Plaintiff's former wife, and there are no allegations that her actions involve any fraud perpetrated by Defendants using wire, radio or television.

[5] The assertions from the Complaint are not conceded as true but are presented herein for purposes of this Motion.

2.  In the Complaint filed by the Plaintiff, he raised the following claims against Defendants: 1) Violations of RICO, 18 U.S.C. § 1962(c); 2) Conspiracy to Violate 18 U.S.C. § 1962(c) – Violation of 18 U.S.C. § 1962(d); 3) Violations of RICO, 18 U.S.C. § 1962(b); 4) Conspiracy to Violate 18 U.S.C. § 1962(b) – Violation of 18 U.S.C. § 1962(d); 5) Fraudulent Nondisclosure/Fraudulent Concealment – Utah Common Law; 6) Negligent Nondisclosure – Utah Common Law; 7) Exemplary Punitive Damages; and 8) Injunctive Relief. *See Id.*

3.  According to Plaintiff, "[e]ach Defendant has engaged in a pattern of wire fraud and therefore a pattern of racketeering activity." *Id.* at ¶386.

4.  Plaintiff "brings this action for damages and injunctive relief as one of the victims of this racketeering scheme." *Id.*

5.  "Plaintiff and Savage were formerly married. During their marriage [in 2015], Savage sought Hildebrandt for routine counseling." *Id.* at ¶¶12 & 192.

6.  The Plaintiff filed for divorce in October of 2016 and the divorce was finalized in 2018. *Id.* at ¶279;  *See Also* Tilleman, 2024 UT App at ¶¶ 3-4.

7.  The Plaintiff never met Hildebrandt, never spoke to her, and never personally paid her or ConneXions any funds. Complaint at ¶¶222 & 203 (where Savage and not Plaintiff allegedly spent[6] monies on services from ConneXions).

8.  "Shortly []after [2015], Savage became a loyal associate of Hildebrandt." *Id.* at ¶193.

---

[6] While the Plaintiff alleges that Savage spent $5,000 of marital funds on services through ConneXions and that he objected to her spending these funds, the Plaintiff never alleges that Savage did not have authority to spend those funds. *See* Complaint, generally. Further, the Plaintiff avers that he and the Defendant Savage are divorced – presumably, such divorce addresses property division and would obviate any claim the Plaintiff has to the payment by Savage for counseling services. *See Id..* at ¶203 (where Plaintiff alleges that "During the course of their marriage, Savage spent approximately $5,000 of marital funds on services through ConneXions, including without limitation counseling sessions with Hildebrandt, which were around $200 per individual session and $100 per month for group sessions."

9. "In 2016, Plaintiff objected to the amount of the couple's money Savage was spending on the Enterprise's services and products through personal counseling and related written materials with Hildebrandt and ConneXions." *Id.* at ¶200.

10. "Savage pressured Plaintiff to attend and pay for instruction at ConneXions…"; however, from the allegations of the Complaint, the Plaintiff never met Hildebrandt, never spoke to her, and never personally paid her or ConneXions any funds. *Id.* at ¶¶206, 222 & 203.

11. "Plaintiff felt he was being led into a cult, and upon researching ConneXions [in or before 2016], discovered Hildebrandt's prior professional and illegal misconduct." *Id.* at ¶¶208 & 200.

12. "Plaintiff repeatedly protested Savage's subservience to Hildebrandt, membership in the Enterprise, and attempts to coerce Plaintiff to accept Hildebrandt's methodology and to participate in the Enterprise." *Id.* at ¶218.

13. Prior to filing for divorce in October of 2016, Plaintiff told Savage numerous times that Hildebrandt was destroying their marriage and pleaded with Savage that she see any other counselor besides Hildebrandt, and he also expressed his fear that Hildebrandt would destroy his reputation through public, defamatory allegations, as she had done to Steed." *Id.* at ¶¶219-220.

14. According to Plaintiff, in or around early 2016, "… Hildebrandt instructed Savage to scan Plaintiff's laptop without his knowledge to find pornography," and "[a]round February 2016, Savage searched Plaintiff's laptop without his knowledge in an effort to interfere and/or interrupt Plaintiff's lawful use of his computer technology…" *Id.* at ¶223-224.

15. According to the Plaintiff, "[i]n May 2016, at the direction of Hildebrandt, Savage demanded that the couple separate." *Id.* at ¶233.

16. "In May 2016, when Savage unlawfully restricted Plaintiff's time with EJT and then demanded that she and Plaintiff separate, Savage provided Plaintiff with ultimatums (designed to

either financially enrich or further the objectives of the Enterprise) to comply with or otherwise face divorce." *Id.* at ¶238.

17. According to Plaintiff, in July 2016, Savage sent an email to Plaintiff stating:

> What I hear you say is . . . The bad Mike is dead and the good Mike is in full swing. I will hold you accountable for your behaviors to align with what you are saying. If you are where you say you are, you will be willing to step into the Truth and stay there. . . . Partnered with God, I will be the judge of where you are. And although I am so hopeful about what you say, your behaviors will be the real manifestation of it. When you come home, I hope you are prepared to SHOW me in your actions you are in real recovery. *Id.* at ¶241.

18. According to Plaintiff "Savage unlawfully dictated limited parent time between Plaintiff and EJT until mid-September 2016, when she unlawfully and completely deprived Plaintiff access to EJT." *Id.* at ¶¶247-248.

19. The Plaintiff contends that after repeatedly informing Savage that her behavior violated his and EJT's legal rights, in 2016, Plaintiff sought emergency legal relief to regain access to his daughter. *Id.* at ¶¶249-250.

20. In October 2016, Plaintiff filed for divorce and an emergency injunction to protect his parental rights. *Id.* at ¶252.

21. On October 6, 2016, Savage texted the following message to Plaintiff:

> I know there is no way to change if you avoid the pain, or shut down from feeling it. People who enable you to not feel the consequence of your actions don't really love [you]. That is what I did when we lived together. The most loving thing I've ever done for you is to separate and no longer enable you. The pain is what makes us strong enough to never commit the sin again. I know we will never have that strength to change unless we feel the pain. I give it as my personal opinion that I believe you haven't really felt that because I've seen you shut down from feeling pain and I haven't seen that you felt the joy of repentance. That makes me sad. I know what joy is waiting for you that you have chosen not to enjoy." *Id.* at ¶¶270-271.

22. "Plaintiff and Savage were awarded a bifurcated decree of divorce on March 13, 2018." *Id.* at ¶273.

23. The Plaintiff alleges that "[i]n 2017, shortly after Plaintiff filed for divorce in October 2016, EJT began returning from Savage with unusual injuries…". *Id.* at ¶279.

24. The Complaint alleges numerous allegations of abuse by Savage of EJT over a period from 2017 through 2020. *Id.* at ¶¶288, 290, 293-295, 307, & 309.

25. In the appellate court opinion cited at ¶15 of the Complaint (reference is *Tilleman v. Tilleman*, 2024 UT App 54, 549 P.3d 65), the Utah Court of Appeals found that the trial court's findings were sufficiently supported by evidence that Plaintiff's

> reports of abuse were vexatious and were calculated and designed to harm Mother is supported by the sheer number of reports Father made that never resulted in criminal charges being filed against Mother or in DCFS taking enforcement action against her. Several different agencies all investigated Mother and each investigation produced the same result. Although, as Father points out, they could not conclusively rule out the possibility that Mother abused Child, the many investigations did not produce sufficient evidence of abuse to cause intervention by the authorities. After multiple reports of such injuries to various authorities and medical professionals did not produce the desired intervention, it was not unreasonable for the court to find that Father's primary motivation in continuing to file such reports was his desire to harm Mother. Tilleman, 2024 UT App at ¶58.

26. While the Plaintiff alleges that Savage is a recruiter for the Enterprise, he does not allege any financial remuneration Savage receives from the enterprise. *Id.*. at ¶325, and generally.

27. Plaintiff alleges for instance that in 2016, in addition to trying to convince him to participate with ConneXions, that from at least May 2016 through July 2016, "…Savage used interstate wires to recruit Jessica Blanch, Plaintiff's brother's ex-wife, into the Enterprise." *Id.* at ¶326.

28. Plaintiff alleged that due to Savage withholding access to EJT from the Plaintiff that he was forced to start work later than expected and thus suffered damages. *Id.* at ¶¶570-573.

29. Plaintiff further alleges that due to Savage's actions as to him and EJT, he was further damaged in losing his job, lost earnings, not being able to go to law school and other items. *Id.* at ¶¶576-597.

30. However, Plaintiff does not make any factual assertions that his damages were proximately caused by the alleged wire fraud of Hildebrandt and/or ConneXions and instead only alleges that his damages were caused by actions of Savage. *Id.*, generally.

## ARGUMENT

### A. Standard.

The Supreme Court has established that in order to survive a Motion to Dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter ... 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations and quotation marks omitted)*. "Under this standard, facial plausibility is achieved when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hunter v. Agility Energy, Inc., 419 F.Supp.3d 1269, 1272 (D. Utah 2019) (citing Iqbal at 678, 129 S. Ct. 1937)*. "In determining facial plausibility, the Court's function 'is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient' when the asserted 'factual allegations are accepted as true.'" *Id.* (citing *TecServe v. Stoneware, Inc.*, No. 2:08-CV-144-TS, 2008 WL 3166653, at *3 (D. Utah Aug. 5, 2008) and *Acosta v. Jani-King of Okla., Inc.*, 905 F.3d 1156, 1158 (10th Cir. 2018)). "As such, 'a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do', 'nor [will] a complaint suffice if it tenders naked assertions devoid of further factual enhancement.'" *Id.* (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). "[I]n examining a complaint under Rule 12(b)(6), we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Brown v. Titan Prot. & Consulting*, 2022

U.S. App. LEXIS 9076, 2022 WL 1014154, at * 4 (10th Cir. Apr. 5, 2022) (citation omitted). "…

[T]he factual allegations must be enough to raise a right to relief above the speculative level." *Diaz*

*v. United States Attorney Gen.*, 669 F. App'x 949, 949 (10th Cir. 2016) (citation and internal

quotation marks omitted).

**B. Plaintiff's civil RICO claims should be dismissed because the Complaint does not show that Defendants committed a RICO predicate offense against Plaintiff or that his purported injuries were directly caused by said RICO predicate offense.**

Plaintiff raises four civil claims under RICO in this case. Those claims are for: 1) violations of

18 U.S.C. § 1962(c); 2) conspiracy to violate 18 U.S.C. § 1962(c) – violation of 18 U.S.C. §

1962(d); 3) violations of RICO, 18 U.S.C. § 1962(b); and 4) conspiracy to violate 18 U.S.C. §

1962(b) – violation of 18 U.S.C. § 1962(d). *See* Complaint, generally. A RICO violation requires:

"(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Dummar v.*

*Lummis*, 543 F.3d 614, 621 (10th Cir. 2008) (citation omitted). "The statute defines "racketeering

activity" to encompass dozens of state and federal offenses, known in RICO parlance as

predicates." *RJR Nabisco, Inc. v. European Community.*, 579 U.S. 325, 329-330, 136 S. Ct. 2090,

195 L.Ed.2d 476 (2016). "A predicate offense implicates RICO when it is part of a "pattern of

racketeering activity"—a series of related predicates that together demonstrate the existence or

threat of continued criminal activity." *Id.,* 579 U.S. at 330 (citation omitted). A "'pattern of

racketeering activity' requires at least two acts of racketeering activity, one of which occurred after

the effective date of this chapter and the last of which occurred within ten years…" 18 U.S.C. §

1961(5).

Wire fraud, the predicate offense relied upon by Plaintiff to support his civil RICO claims

under 18 U.S.C. § 1961(1)(B), has a specific definition under the law. Under 18 U.S.C. § 1343,

fraud by wire, radio, or television is committed by-

> [w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice…

"The elements of mail fraud … are (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of the mails to execute the scheme. *Sorensen v. Polukoff*, 784 F. App'x 572, 577 (10th Cir. 2019) (citation omitted). "… [T]he indictable act under § 1341 is not the fraudulent misrepresentation, but rather the use of the mails with the purpose of executing or attempting to execute a scheme to defraud." *Bridge v. Phoenix Bond & Indemnity. Co.*, 553 U. S. 639, 653, 128 S. Ct. 2131, 170 L.Ed.2d 1012 (2008). "The elements of wire fraud under 18 U.S.C. § 1343 are similar [to mail fraud] but require that the defendant use interstate wire, radio or television communications in furtherance of the scheme to defraud." *Sorensen*, at p. 577 (citations omitted).

Standing[7] to sue under RICO requires a party to show that the predicate offense was both the but for cause as well as the proximate cause of the Plaintiff's alleged injury.

> … [T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well. Proximate cause for RICO purposes, we made clear, should be evaluated in light of its common-law foundations; proximate cause thus requires 'some direct relation between the injury asserted and the injurious conduct alleged.' A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Hemi*, 559 U. S. at 9 (citations omitted).

Thus, "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel*

---

[7] "… RICO allows [a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [to] sue therefor … and ... recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee ... , standing for private individuals under RICO requires a plaintiff to have been injured in his business or property by the conduct constituting the violation." *Tal v. Hogan*, 453 F.3d 1244, 1253-1254 (10th Cir. 2006) (citations and internal quotation marks omitted).

*Supply Corp.*, 547 U.S. 451, 461, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006).

Based on the foregoing, the Complaint in this case fails to state a claim under civil RICO. The Complaint does not identify any specific illegal acts that would qualify as predicate acts leading directly to Plaintiff's alleged injuries. Here, Plaintiff specifically names wire fraud as the predicate offense of this civil RICO claims. However, the injuries enumerated by Plaintiff have no direct relation with his theory of wire fraud. The injuries enumerated by Plaintiff pertain to the alleged abuses committed by Savage from 2016 to 2020. While the Plaintiff alleges a tangential connection between Savage's alleged abuses, he does not present a factual basis that the alleged wire frauds were the proximate cause of those alleged damages.

The specific allegations of Plaintiff as to Hildebrandt's and ConneXions of wire fraud are primarily outlined in the Exhibit to the Complaint. However, the Plaintiff does not present any specificity that those specific alleged acts of alleged wire fraud were the proximate cause of Plaintiff's injury. Indeed, the Plaintiff presents no factual assertions that the predicate offenses "led directly to the plaintiff's injuries" as contemplated under *Anza*. The Plaintiff has asserted that he never met Hildebrandt and that he thought Hildebrandt and ConneXions were essentially a cult (in 2016). He also alleged that in 2016 he knew of Steed and was concerned about Hildebrandt defaming him. Based on a plain reading of the Complaint, the Plaintiff was therefore not directly damaged[8] by Hildebrandt or ConneXions in any way that was caused by the alleged wire fraud. Even when taking as true the allegations in the Exhibit and all those in the Complaint, there is no

---

[8] While the Plaintiff does contend that his wife used marital property to pay approximately $5,000 to ConneXions, he does not allege that she did not have equal right to those funds or the ability to choose how to expend those funds. *See* Complaint at ¶203. Indeed, he alleges that his wife was willing to spend all their money on ConneXions. *Id.* at ¶201. Even if this amount of funds could be deemed "damages" of Plaintiff, he knew his wife spent the funds in 2016 and he believed that she was spending the funds on a cult, thus triggering the statute of limitations on any such possible damages, as argued below.

sufficient factual basis to establish a claim that Defendants committed fraud upon Plaintiff through the use of wire, radio, or television communication in interstate or foreign commerce. More importantly, there is absence of any false or fraudulent pretenses, representations, or promises to the Plaintiff. Because the purported injuries suffered by Plaintiff do not arise out of a predicate offense specifically defined by law, Plaintiff's civil RICO claims should be dismissed.

Moreover, "[a] pleading that states a claim for relief must contain: ... a short and plain statement of the claim showing that the pleader is entitled to relief..." Fed. R. Civ. P. 8(a)(2). "We have held that, to adequately plead mail and wire fraud under Rule 9(b), Plaintiffs must allege 'the time, place and contents of the false representations, the identity of the party making the false statements, and the consequences' of the false representations." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1277 (10th Cir. 2023) (citations omitted). "Put differently, a complaint stating the 'who, what, where, when, and how' of the alleged fraud gives a defendant the requisite level of notice required under Rule 9(b)." *Id.*

The Complaint, comprises 654 paragraphs and Exhibit 1, and yet no paragraphs satisfy the requirement that a pleading must contain a short and plain statement of how the actual alleged wire fraud directly led to Plaintiff's damage. The allegations of wire fraud in the Complaint are mere generalizations and bald conclusions[9]. Indeed, none of the allegations of wire fraud by Hildebrandt and/or ConneXions are alleged to have been made to the Plaintiff and there are no allegations that such wire fraud caused the Plaintiff direct damage. Instead, the Plaintiff appears to hope this Court

---

[9] The one exception could be the argument that his wife spent $5,000 on Connexions (Complaint at ¶203). Because the Plaintiff never alleges that his wife did not have his permission or otherwise spent those funds without his knowledge (which is not plausible based on other allegations in the Complaint), it is believed that even this allegation cannot withstand dismissal. Further, it is presumed that the $5,000 was resolved in the divorce decree and thus that damage is no longer a viable claim. Regardless however, the funds were spent in 2016 and the Plaintiff believed that the funds were being spent on a cult at the time. Therefore, any claim regarding those funds has long since expired under the relevant statute of limitations.

simply accepts that because Hildebrandt was convicted of abuse, somehow, she must have directed Savage to commit abuse years ago. Such a logical leap is not supported by specific factual allegations that could rise to a determination that the alleged predicate acts of wire fraud somehow directly damaged the Plaintiff. Simply asserting that teachings of Hildebrandt caused his wife to act in certain ways is insufficient to show a direct proximate cause of the Plaintiff's damages. Even assuming factual (not conclusory) allegations are true, such as Hildebrandt telling Savage to rescind her agreement to look to their church leaders for guidance (Complaint at ¶256), or at the direction of Hildebrandt Savage demanding the couple separate (*Id.* at ¶ 233), or "utilizing a tactic of the Hildebrandt methodology" to engage in certain behavior (*Id.* at 244), there still are not allegations that these were acts of wire fraud or that they directly damaged the Plaintiff.

Because the Complaint does not allege any plausible act of wire fraud committed by herein Defendants as the direct cause of Plaintiff's injuries and because the available allegations do not satisfy the particularity requirement, Plaintiff's civil RICO claims must be dismissed.

### C. Because Plaintiff's purported injuries were not caused by a predicate offense as outlined above, his claims for conspiracy under RICO must likewise fail.

As outlined above, the Complaint does not identify any specific illegal acts by Hildebrandt or ConneXions that would qualify as a RICO predicate offense because any injury upon Plaintiff was not a direct result of fraud committed by Defendants through the use of wire, radio, or television communication. Absent this essential element of wire fraud, the claims fail as a matter of law. However, it also necessarily follows that his claims for conspiracy under RICO must likewise be dismissed.

"Injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO does not give rise to a cause of action under §1964(c) for a violation of §1962(d)." *Beck v.*

*Prupis*, 529 U.S. 494, 494, 120 S. Ct. 1608, 146 L.Ed.2d 561 (2000). "To determine what it means to be 'injured … by reason of a conspiracy,' this Court must look to the common law of civil conspiracy[, and a]t common law, it was widely accepted that a plaintiff could bring suit for civil conspiracy only if he had been injured by an act that was itself tortious." *Id.* "When Congress adopted RICO, it incorporated this principle." *Id.*

Here, the Plaintiff appears to be attempting to relitigate his divorce in federal court. The Utah Court of Appeals has already upheld the Utah trial court's findings as it related to Plaintiff's numerous assertions of abuse by Savage.[10] Namely upholding the trial court's finding that Father's primary motivation in continuing to file such abuse reports was his desire to harm Mother. Again, as outlined above, the only possible allegations of "tortious conduct" by Hildebrandt and ConneXions are allegations of wire fraud that has no direct correlation to Plaintiff's actual damage. Because Plaintiff was not injured by a RICO predicate offense as discussed above, it necessarily follows that he cannot assert a claim for RICO civil conspiracy.

### D. Even assuming that Plaintiff's injuries were proximately caused by a RICO predicate offense, the factual allegations in the Complaint show that Plaintiff's injuries took place outside the relevant statutes of limitations.

"The statute of limitations for civil RICO claims is four years from either the discovery of the injury or the date the injury occurred." *Wolpert v. Utah Valley Univ.*, 21-4031, D.C. No. 2:19-CV-))397-TC, p. 6 (10th Cir. Nov 24, 2021) (citations omitted); *See Also Dummar*, 543 F.3d at 621. "A RICO 'injury' is the 'harm from the predicate acts that constitute racketeering activity.'" *Wolpert*, at p. 6 (citation omitted). It is well settled that a plaintiff's failure to institute a specific

---

[10] While the Plaintiff alleges that he "prevailed on appeal" (Complaint at ¶ 15), this assertion ignores the fact that the Court of appeals found that "[a]fter multiple reports of such injuries to various authorities and medical professionals did not produce the desired intervention, it was not unreasonable for the court to find that Father's primary motivation in continuing to file such reports was his desire to harm Mother." *Tilleman*, 2024 UT App at ¶58.

claim within the period prescribed by the applicable statute of limitations will bar that claim. *See Robert L. Kroenlein Trust v. Kirchhefer*, 764 F.3d 1268, 1279 (10th Cir. 2014); *See Also Ballen v. Prudential Bache Securities, Inc.*, 23 F.3d 335, 336 (10th Cir. 1994).

Here, Plaintiff filed the instant case in January of 2025. Plaintiff's claims against Defendants are entirely predicated on injuries or harm that he or EJT purportedly suffered at the hands of Savage that transpired between 2015 to 2020. The gist of the Complaint is the alleged domestic, marital and parental abuses committed against Plaintiff and EJT by Plaintiff's former wife Savage, through the influence of Defendants. Based on the Complaint, those alleged abuses transpired no later than 2020. As alleged in the Complaint and reiterated above, Savage was involved with Defendants since 2015. In 2016, Plaintiff already objected to the amount of the couple's money Savage was spending on Defendants' services. The alleged marital abuses transpired between 2016-2018. In fact, Plaintiff and Savage divorced in 2018 because of such marital issues. While Plaintiff asserts that after their divorce was finalized in 2018, "…Savage began implementing the Enterprise's objectives of child abuse and child torture with EJT," (Complaint at ¶ 274), no purported abuse is alleged in the Complaint against Plaintiff or EJT after February of 2020. Given the foregoing, the statute of limitations has expired on Plaintiff's civil RICO claims since he filed the instant case only in January 2025 or more than four years after his injuries.

Because of the expiration of the applicable statute of limitations, the only way that the Plaintiff could maintain the present action is through the tolling of the statute of limitations. The Plaintiff asserts that he "was unaware of the illegitimate, fraudulent, and harmful nature of the Enterprise until the arrests and subsequent sentencing of Hildebrandt and Franke in August 2023 and February 2024, respectively." However, that conclusory assertion does not toll the running of the statutes of limitations. It is also belied by the allegations in the Complaint showing that Plaintiff

was fully aware of the facts surrounding his alleged injuries at the time said injuries were inflicted. As stated in Plaintiff's allegations and restated above, Plaintiff made repeated objections, oppositions and protestations over the alleged abuses by Savage and Defendants. Further, he knew that his wife spent money on ConneXions in 2016, which he believed to be a cult. He also refused to participate and never met Hildebrandt. As such, he cannot claim that he was unaware of his injuries.

"Traditionally, a right 'accrues'—starts the clock ticking on the limitations period—'when the plaintiff has a complete and present cause of action.'..." *Kroenlein*, 764 F.3d at 1275 (citations omitted). "Under this rule, often called the "injury-occurrence rule," a claim would "accrue" when the injury occurs, even if undiscovered." *Id.* "But exceptions exist to the injury-occurrence rule where the nature of the harm or the cause of the harm is difficult to detect." *Id.* "In these exceptional cases, courts apply an injury-discovery rule, which provides that the injury 'is deemed to be discovered when, in the exercise of reasonable diligence, it could have been discovered.'" *Id.* "The RICO statute does not provide an accrual rule, and the Supreme Court has not weighed in definitively on the issue[, b]ut the Court has recognized that either the injury-discovery rule or the injury-occurrence rule will apply." *Id.*, 764 F.3d at 1276.

> For RICO claims,[w]hile the Supreme Court has not settled upon a definitive rule for when the limitations clock starts running, it has announced two possibilities: either when the plaintiff knew or should have known of his injury (the injury-discovery rule); or when the plaintiff was injured, whether he was aware of the injury or not (the injury-occurrence rule). *Avington v. Bank of Am.*, 857 Fed. Appx. 442, 444 (10th Cir. May 24, 2021) (citation omitted).

Plaintiff's civil RICO claims are barred by the statute of limitations and there is no tolling of the limitations period on Plaintiff's claims under either the injury-occurrence rule or the injury-discovery rule.

Plaintiff cannot toll the running of the period under the injury-occurrence rule because Plaintiff's alleged injury, as outlined above, occurred in 2020 and earlier but he filed his case only in 2025. As noted above, he knew his wife spent the couple's money on ConneXions at time where he refused to participate with his wife, he did not meet with Hildebrandt, and otherwise did not want to participate because he believed it was a cult. Further, even if he had a claim that the payment of monies by his wife to ConneXions did cause him damage, the couple's finances were presumably addressed in the couple's divorce and therefore, the Plaintiff would not hold any claim to those funds at this point. Because he filed his civil RICO claims more than four years from the time his purported injuries occurred, he cannot toll the limitations period under that theory.

Plaintiff cannot likewise toll the running of the period under the injury-discovery rule. The injuries and the circumstances surrounding those injuries are not difficult to detect because Plaintiff was, in fact, fully aware of those injuries at or around the time said injuries were inflicted, as may be shown from the Complaint. Curiously, the parties have already litigated the allegations of abuse by Savage in Utah courts, as evidenced by the Court of Appeals opinion (attached hereto as **Exhibit A**), in which that court did not disturb the trial courts findings regarding the allegations of abuse lodged by Plaintiff (which came about from the "desire to harm Mother [Savage]"). *Tilleman*, 2024 UT App at ¶58.

"Under the injury-discovery rule the injury is deemed to be discovered when, in the exercise of reasonable diligence, it could have been discovered. The rule applies only in the exceptional case where a reasonably diligent plaintiff could not immediately know of the injury and the cause." *Wolpert*, at p. 6 (citations and internal quotation marks omitted). "The plaintiff need not discover all elements of the [defendants'] fraudulent scheme to be on notice of the potential of fraud." *Id.*, at p. 7. In this case, Plaintiff was fully aware and even confronted Savage about his injuries

included in his Complaint. Plaintiff, as early as 2016, objected to the amount money Savage was spending on the Defendants' services. *See* Complaint, at ¶200. Plaintiff even "felt he was being led into a cult, and upon researching ConneXions, discovered Hildebrandt's prior professional and illegal misconduct." *Id.*, at ¶208. "Despite Plaintiffs protestations, Savage declared she would spend all of the couple's money on the Enterprise and ConneXions' services and products and would stay married to Plaintiff only if he declared unwavering allegiance to Hildebrandt's methodology…" *Id.*, at ¶221. "On numerous occasions, including in writing, Plaintiff informed Savage that Hildebrandt was destroying their marriage and pleaded with Savage that she see any other counselor besides Hildebrandt." *Id.*, at ¶219. Plaintiff and Savage divorced in 2018. In 2018, Plaintiff and Savage divorced allegedly because of Savage's involvement with Defendant which caused their marital problems.

Plaintiff was likewise aware of the purported injuries committed upon EJT beginning 2016 until 2020 and even confronted Savage about those injuries. In fact, Plaintiff even sought police intervention in 2017. *Id.*, at ¶¶281-282. As such, Plaintiff cannot seek refuge under the injury-discovery rule because his purported injuries were not concealed from him. Indeed, these injuries were the reason, based on the allegations of the Complaint, for the Plaintiff to file for divorce in October of 2016. He litigated the claims of abuse through trial and on appeal to the Utah Court of Appeals. Now, he belatedly filed this action against Defendants despite knowing of his injuries at the time said injuries were inflicted.

Plaintiff also appears to invoke the "injury and pattern discovery rule" in asserting that he did not become aware of the illegitimacy or fraudulent nature of the Enterprise until the arrests and subsequent sentencing of Hildebrandt and Franke in August 2023 and February 2024. That argument should be rejected by this Court. "Under the 'injury pattern' rule, a civil RICO claim

would accrue only when the plaintiff 'discovers, or should discover, both an injury and a pattern of RICO activity.'" *Kroenlein*, 764 F.3d at 1278 (citing *Rotella v. Wood,* 528 U.S. 549, 553, 120 S.Ct. 1075). However, "the Supreme Court specifically rejected the 'injury pattern' discovery accrual rule that some circuits had adopted." *Id.* "… [I]n *Rotella*, the Supreme Court explained that, to bring a civil RICO claim, the plaintiff need only have discovered the injury, not the other elements of the RICO claim..." *Id.* "… [D]iscovery of a RICO 'injury' does not require a plaintiff to definitively determine who actually committed the predicate act to trigger the limitations period, so long as the plaintiff is aware of his injury." *Id.* As outlined above, Plaintiff's alleged injuries or harm transpired in 2016 to 2020. Even assuming that he did not become aware of the illegitimacy or fraudulent nature of the Enterprise until August 2023 and February 2024, the statute of limitations ran from the date of the injuries as outlined above, and not from the time he became aware of the purported illegitimacy or fraudulent nature of Defendants.

Neither can Plaintiff assert that the statute of limitations should be tolled because of his theory of conspiracy. In cases of "continuing violation" like in conspiracy,

> each overt act that is part of the violation and that injures the plaintiff,… starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times… But the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period… the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period. *Klehr v. A. O. Smith Corp.*, 521 U.S. 179, 189, 117 S. Ct. 1984, 138 L.Ed.2d 373 (1997) (citations omitted).

Given the foregoing, Plaintiff's civil RICO claims should be dismissed because of the application of the relevant statute of limitations and because there is no reason to toll the running of the limitations period.

///

**E. Plaintiff's nondisclosure claims fail because Defendants had no duty to disclose information to Plaintiff or alternatively, he has not been damaged by any alleged non-disclosure, and because said claims are barred by the relevant statute of limitations.**

Plaintiff also raises claims against Defendants for Fraudulent Nondisclosure/Fraudulent Concealment and Negligent Nondisclosure under Utah Common Law as his Fifth and Sixth Causes of Action, respectively. In support of these claims, Plaintiff points to his allegations under paragraphs 207 through 217, and 398 of his Complaint. Plaintiff contends that he was "pressured" by Savage to attend and pay for instruction at ConneXions in 2016 which purportedly created a duty to disclose on the part of Defendants. *See* Complaint, at ¶¶200, 206-217. Plaintiff explains that "[a]t this time, Hildebrandt and ConneXions established a direct relationship with Plaintiff, which in turn established a duty for Hildebrandt and ConneXions to inform Plaintiff of material facts that would impact their relationship and the advice provided to Plaintiff and Savage by Hildebrandt and ConneXions." *Id.*, at ¶207. While the Plaintiff alleges he was pressured to participate in "instruction at ConneXions" (*Id.*, at ¶206), he also avers that he never met Hildebrandt and she never spoke to him (*Id.*, at ¶ 222).

"To prevail on a claim of fraudulent nondisclosure, a plaintiff must prove by clear and convincing evidence that (1) the defendant had a legal duty to communicate information, (2) the defendant knew of the information he failed to disclose, and (3) the nondisclosed information was material." *Hess v. Canberra Dev. Co.*, 2011 UT 22, ¶29, 254 P.3d 161, 168 (Utah 2011) (footnote omitted). In Utah, "[a] party is liable for fraudulent nondisclosure if he omi[ts] . . . a material fact when there is a duty to disclose, for the purpose of inducing action on the part of the other party, with actual, justifiable reliance resulting in damage to that party." *Barber Brothers Ford v. Foianini*, 2008 UT App 463, p. 1 (Utah App. 2008) (citation and internal quotation marks omitted).

"Whether a duty [to disclose information] exists is strictly a question of law; it grows out of the relationship between the parties, and the duties created by that relationship." *Id.,* at n. 2. "We recognize that in Utah the elements for fraudulent nondisclosure are essentially the same as those for fraudulent concealment… Accordingly, Utah courts have sometimes used the names of the two causes of action interchangeably." *Anderson v. Kriser*, 2011 UT 66, 266 P.3d 819, at n. 11 (Utah 2011).

> … [T]he *Anderson* court contrasted fraudulent nondisclosure with negligent nondisclosure, explaining that the essential difference between the two claims is the mental state of the defendant that the plaintiff must establish in order to prevail. For fraudulent nondisclosure, a defendant must have a willful intent to deceive, while for negligent nondisclosure, the plaintiff is not required to demonstrate any wrongful intent on the part of the defendant. *Jensen v. Cannon*, 2020 UT App. 124, ¶22, 473 P.3d 637, 643 (Utah App. 2020) (citations and internal quotation marks omitted).

"… [T]he fundamental question in a claim for negligence, or negligent nondisclosure, is whether a defendant, who had a duty to disclose information, 'should have known' of the information that the defendant failed to disclose, 'regardless of what the defendant actually knew.'" *Anderson*, 2011 UT ¶25 (footnote omitted). "[N]ondisclosure becomes fraudulent only when there is an existing fact or condition ... which the party charged is under a duty to disclose … [a] person who possesses important, even vital, information of interest to another has no legal duty to communicate the information where no relationship between the parties exists." *Gilbert Dev. Corp.. v. Wardley Corp.*, 2010 UT App 361, ¶21, 246 P.3d 131, 139 (Utah App. 2010).

As may be seen above, both claims for Fraudulent and Negligent Nondisclosure require a duty to disclose information on the part of a defendant.  Here, the only allegation of Plaintiff to support his assertion that Defendants have the duty to disclose information is that he was purportedly "pressured" by Savage to attend and pay for "instruction" at ConneXions. That fact alone is insufficient to create a fiduciary or agency relationship between Plaintiff and Defendants as to give

rise to a duty to disclose on the part of Defendants. Here, the Plaintiff never met Hildebrandt, never spoke to her, and never paid her or ConneXions any funds (while his wife did). Complaint at ¶222 & ¶203. Without any direct relationship with Hildebrandt, there is no duty on the part of her to Plaintiff. Indeed, "[a] fiduciary relationship is not presumed in Utah." *Peterson v. Koch Industries, Inc.*, 684 F.2d 667, 671 (10th Cir. 1982) (citation omitted). As such, Plaintiff does not present any basis to claim that there exists a duty to disclose on the part of Defendants. Even if he obtained some instruction from Connexions (Complaint at ¶206), receiving instruction, without meeting Hildebrandt cannot give rise to any legal duty to disclose anything to the Plaintiff.

Furthermore, Plaintiff and Defendants have not placed their trust and confidence upon each other, and they did not have any other transaction aside from the alleged instruction from Defendants. Plaintiff even felt that "he was being led into a cult, and upon researching ConneXions, discovered Hildebrandt's prior professional and illegal misconduct." *See* Complaint, ¶208. As such, Plaintiff never placed his trust upon Defendants. Plaintiff did not rely upon Defendants. Plaintiff's assertion that a duty to disclose arose between him and Defendants is a legal conclusion which should not be taken as true by this Court.

Even if the allegation that Plaintiff received instruction from ConneXions, his damage for any nondisclosure would be repayment of any fees paid for such instruction. The divorce of the Plaintiff and Savage is final. Such divorce decree presumably addresses the property split of the parties and thus addresses any pre-divorce payments for or to ConneXions. As such, the Plaintiff cannot establish the essential element of damages under his theory of non-disclosure.

Another ground for the dismissal of both non-disclosure claims is that the statute of limitations expired on said claims, as the alleged "direct relationship" that established the alleged duty commenced in 2016 and certainly ended by the time of the Plaintiff's divorce in 2017. "An action

may be brought within three years:… for relief on the ground of fraud …; except that the cause of action does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake." U.C.A. § 78B-2-305(3). Negligence claims are "subject to the general four-year limitations period..." *DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 842 (Utah 1996); *See Also* U.C.A. § 78B-2-307(4). The claim for Fraudulent Nondisclosure or Fraudulent Concealment should be raised within three years from the discovery of fraud, while the Negligent Nondisclosure claim should be raised within the general four-year limitations period.

Plaintiff claims that he "did not become aware of the illegitimacy or fraudulent nature of the Enterprise until the arrests and subsequent sentencing of Hildebrandt and Franke in August 2023 and February 2024, respectively." Thus, asserting that Plaintiff only recently discovered the alleged fraud/negligence. This assertion should be rejected by the Court. In Utah, there are two instances where the Plaintiff can evoke the "equitable discovery rule" in order to toll the relevant statute of limitations that would otherwise bar the Plaintiff's claims against Defendants. The first instance where the Plaintiff may evoke the equitable discovery rule is "where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct." *Russell Packard Development, Inc. v. Carson*, 2005 UT 14, ¶25, 108 P.3d 741, 747 (Utah 2005) (citation omitted). The second instance where the Plaintiff may evoke the equitable discovery rule is "where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action." *Id.* "Before a period of limitations may be tolled under either [the exceptional circumstances or concealment] versions of the discovery rule, an initial showing must be made that the plaintiff did not know and could not reasonably have discovered the facts underlying the cause of action in time to commence an action within that

period." *Walker Drug Co. v. La Sal Oil Co.*, 902 P.2d 1229, 1231 (Utah 1995). "Knowledge which is sufficient to lead a prudent person to inquire about the matter when it could have been ascertained conveniently, constitutes notice of whatever the inquiry would have disclosed, and will be regarded as knowledge of the facts." *Columbian Nat'l Life Ins. Co. v. Rodgers*, 116 F.2d 705, 707 (10th Cir. 1940). In addition, Utah courts have said that "[a] party who has opportunity of knowing the facts constituting the alleged fraud cannot be inactive and afterwards allege a want of knowledge that arose by reason of his own laches and negligence." *Peterson*, 684 F.2d at 671 (citations omitted).

Neither of the foregoing exceptions apply in this case. The Complaint shows that Plaintiff was aware of the purported illegitimacy or fraudulent nature of the Enterprise since 2016. As may be seen from the allegations in the Complaint from paragraphs 200 through 221, it was around 2016 that Plaintiff received instruction. It was also around that time that Plaintiff felt that he was being led into a cult. As such, he "repeatedly protested Savage's subservience to Hildebrandt, membership in the Enterprise, and attempts to coerce Plaintiff to accept Hildebrandt's methodology and to participate in the Enterprise." "On numerous occasions, including in writing, Plaintiff informed Savage that Hildebrandt was destroying their marriage and pleaded with Savage that she see any other counselor besides Hildebrandt." Plaintiff and Savage divorced in 2018 (after plaintiff filed in 2017). Given the foregoing, Plaintiff was indeed aware of the alleged illegitimacy or fraudulent nature of the business of Defendants and even protested on numerous occasions to Savage. Therefore, the Plaintiff cannot invoke the discovery rule on his claims for nondisclosure. As such, the relevant statutes of limitations on those claims have lapsed and were not tolled.

///

**F. The ancillary claims for Exemplary and Punitive Damages, as well as for Injunction, likewise fail because the principal claims by Plaintiff should be dismissed.**

Plaintiffs' ancillary claims for Exemplary and Punitive Damages and Injunction are anchored upon his civil RICO claims. As outlined above, those claims fail because the Complaint does not support a claim for civil RICO. As outlined above, Plaintiff also has no standing to file civil RICO cases because he was not injured by a RICO predicate offense. Even assuming that he was, such claims are already barred by the relevant statutes of limitations. As a consequence, Plaintiff cannot raise ancillary claims for Exemplary and Punitive Damages, and Injunction based on RICO.

## <u>CONCLUSION</u>

In view of the foregoing, the Complaint raised by Plaintiff Michael Robert Tilleman against Defendants Jodi Hildebrandt and ConneXions Classroom, LLC, should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

DATED this 19th day of March, 2025.

**DUNN LAW FIRM**

/s/ Adam C. Dunn
 ADAM C. DUNN
*Attorneys for the Defendants Jodi Hildebrandt and ConneXions Classroom, LLC*

///

///

///

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that he is an employee of the Dunn Law Firm and that on the 19th day of March, 2025, he caused to be served, a true and correct copy of the forgoing DEFENDANTS JODI HILDEBRANDT'S AND CONNEXIONS CLASSROOM, LLC'S RULE 12(b)(6) MOTION TO DISMISS and was served on the parties listed below, via the Court's CM/ECF pleading delivery system as follows:

*Attorneys for Plaintiff Tilleman*

PARR BROWN GEE & LOVELESS
Jonathan O. Hafen
jhafen@parrbrown.com
Daniel J. Nelson
djnelson@parrbrown.com
Victoria R. Luman
vluman@parrbrown.com

PRO HAC VICE
Karl M. Tilleman
karl.tilleman.law@gmail.com

ZIMMERMAN BOOHER LLC
LaShel Shaw
lshaw@zbappeals.com
Caroline Anais Olsen
colsen@zbappeals.com

*Attorneys for Defendant Washburn*

SPENCER FANE LLP
Melinda K. Bowen
mbowen@spencerfane.com
R. Scott Young
rsyoung@spencerfane.com

*Via U.S. Priority Mail – Pro se*

RUBY FRANKE – Pro se
262747
Utah State Correctional Facility
PO Box 165300
Salt Lake City, UT, 84116


/s/ Jay E. Mortensen
Employee of Dunn Law Firm