Sam Meziani (#9821)
GOEBEL ANDERSON PC
405 South Main Street, Suite 200
Salt Lake City, Utah 84111
Telephone: (801) 441-9393
SMeziani@GAPCLaw.com

*Attorney for Ruby Franke*

---

## IN THE UNITED STATES DISTRICT COURT

## STATE OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MICHAEL ROBERT TILLEMAN, | **REPLY MEMORANDUM** |
| Plaintiff, | |
| v. | |
| JODI HILDEBRANDT, an individual; RUBY FRANKE, an individual; CONNEXIONS CLASSROOM, LLC, a Utah limited liability company; and MICHAEL WASHBURN, an individual, | Civil No. 2:25-cv-00049-HCN-CMR |
| | Judge Howard C. Nielson, Jr. |
| | Magistrate Judge Cecilia M. Romero |
| Defendant. | |

---

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 2

ARGUMENT ............................................................................................................................ 4

I.    The Complaint Does Not State a Claim for Violations of the RICO Statute .......................... 4

    A.  The Complaint Does Not Allege Franke Engaged in a Pattern of Wire Fraud ................. 4

    B.  The Complaint Does Not State a Claim for Fraud ......................................................... 10

        1.  Scheme or Artifice and Intent to Defraud ................................................................ 10

        2.  The Complaint Does Not Allege Direct Causation .................................................. 14

C. The Complaint Does Not Allege Intent to Join a Conspiracy Whose Aim Was Fraud..... 17

D.  Plaintiff Lacks Standing................................................................................... 18

CONCLUSION.............................................................................................................. 18

## INTRODUCTION

Defendant begins with a summary of facts.  The summary highlights the conclusory nature of the complaint.

The very first paragraph alleges Franke "*has been a critical leader of the Enterprise since at least 2020,*" but there are no actual facts to support the claim that Franke has been a leader, and no facts to support the claim her leadership function has been "critical."[1]  Plaintiff claims Franke "*was second-in-command,*"[2] but there are no facts to establish a command structure or that Franke was second; the allegation is based only on information and belief.  Of course the court does not accept conclusory statements or adjectives as true, and "[a]n allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement."[3]  Plaintiff says Savage adhered to "*Franke's teachings and continues to use them*" but the paragraphs cited[4] document Savage's abuse of her child; the paragraphs do not state that Savage was following the instruction or teachings of Franke, or identify the instructions, or that Franke directed Savage to treat her child in any particular way.  Plaintiff

[1] Compl. ¶ 482 (emphasis added).
[2] Compl. ¶ 377.
[3] *Clinton v. Security Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)); *see Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009) ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").
[4] Compl. ¶¶ 312-24.

claims Savage continued to abuse her child even after Franke's conviction and public rejection of Hildebrandt.  Plaintiff cites Paragraph 346 to support his claim Savage followed Franke's instructions, but that paragraph alleges that "*Savage remains a devoted protégé of Hildebrandt.*" Paragraph 418 claims Franke knowingly induced people to buy products and service from Hildebrandt while "knowing" Hildebrandt would falsely diagnose her customers, but Plaintiff provides no factual support for his claim that Franke in reality knew that Hildebrandt intended to give false diagnoses.  There are numerous other examples of conclusory and unsupported allegations.

The most fundamental problem in this case involving wire fraud predicates is the absence of facts to show Franke committed a pattern of wire fraud.  Conclusions abound, but Plaintiff lacks facts to show Franke intended to cheat Hildebrandt's paying customers[5] by promoting services that she knew were false.

The court must also analyze the complaint for plausibility using its common sense.[6] Plaintiff has fundamentally failed to explain why Franke would abuse her own children in the aim of teachings she knew were false and naturally, Plaintiff lacks *facts* to show this is the case.

The complaint also fails the RICO causation requirement.  Plaintiff fails to show his business or property has been harmed by any act of Franke.  Tenth Circuit and Supreme Court

---

[5] For all the complaint's emphasis on social media communications addressed to the world at large, it is worth recalling that a party commits wire fraud by scheming to take **the victim's** property.   "[A] defendant violates § 1343 by scheming to 'obtain' the victim's 'money or property'…." *Kousisis v. United States*, 605 U.S. _____ (May 22, 2025).  "Obtaining the victim's money or property must have been the 'aim,' not an 'incidental byproduct,' of the defendant's fraud." *Id.* (quoting *Kelly v. United States*, 590 U.S. 391, 402, 404 (2020)*.  Plaintiff has no facts to support a claim Franke obtained money from Plaintiff, much less based upon any alleged scheme or artifice.
[6] *Ashcroft*, 556 U.S. at 664.

precedent requires Plaintiff to show Franke's conduct "led directly to" his injuries.[7]  Plaintiff's brief advocates for a looser foreseeability standard, but the authorities have long foreclosed this argument, and this year the Supreme Court repeated its rule of direct causation slamming the door on Plaintiff's attempt— "foreseeability does not cut it."[8]

It may be inevitable that any attempt to strap wire fraud allegations onto this tragic story of undue influence by Hildebrandt and resulting physical abuse would generate conclusory allegations and the attempted use of an improper causation standard.  When the correct pleading standards for wire fraud and RICO causation are properly applied to these allegations, the complaint fails to state a claim and should be dismissed.

## **ARGUMENT**

### I.  **The Complaint Does Not State a Claim for Violations of the RICO Statute**

#### A.  **The Complaint Does Not Allege Franke Engaged in a Pattern of Wire Fraud**

Counts I and III, the substantive counts, are analyzed separately from the conspiracy allegations.[9]  To state a substantive RICO violation, plaintiff must establish he was injured in his business or property by reason of a RICO violation.[10]  "The elements of a civil RICO claim are (1) investment in, control of or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity."[11]

---

[7] *CGC Holding Co. v. Broad and Cassel*, 773 F.3d 1076, 1088 (10th Cir. 2014) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).

[8] *Medical Marijuana, Inc. v. Horn*, 604 U.S. _____ (Apr. 2, 2025).

[9] Much of Plaintiff's argument conflates the substantive counts with the conspiracy counts.

[10] 18 U.S.C. § 1964(c).

[11] *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (citation omitted); *see Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002); *San Miguel Hosp. Corp. v. Publix Supermarket, Inc.*, No. 1:23-cv-00903, 2025 WL 872972, at *3 (D.N.M. Mar. 19, 2025).

Plaintiff suggests he need not prove Franke engaged, herself, in a pattern of racketeering activity.[12]  The Tenth Circuit pattern instruction for subsection (b) states: "*Third, the defendant engaged in a pattern of racketeering activity*."[13]  The subsection (c) instruction also requires the defendant herself to either conduct or participate in the racketeering conduct through a pattern: "*Fifth, the defendant conducted, or participated in the conduct of, the enterprise through [that pattern of racketeering activity]*."[14]  The pattern instruction is based on the language of the statute.  Plaintiff must allege and prove Franke herself engaged in a pattern of racketeering activity.[15]

The complaint does not allege Franke engaged in a pattern of racketeering activity with any well-plead, non-conclusory factual allegations.

First, considering victims, first and foremost Plaintiff is not a victim of any fraud by Franke.  A "defendant violates § 1343 by scheming to 'obtain' the victim's 'money or property'…."[16] Although reliance is not an element of wire fraud in a criminal case, in RICO

---

[12] Opposition memorandum, p. 8-9.

[13] TENTH CIRCUIT PATTERN INSTRUCTION  § 2.75.1 (2025) (emphasis added).

[14] *Id.* at § 2.76.1 (emphasis added).

[15] Plaintiff attacks a strawman argument that each false statement must be made "via the wires" and accuses Franke of oversimplifying the case law.  But that is not Franke's argument.  The point is the statements do not show intent to a defraud or reveal a knowing misrepresentation; the fact the statements were made in an interstate communication is not the immediate point.  Franke also gently reminds Plaintiff that his complaint equates each communication with a discrete act of wire fraud, claiming "*Hildebrandt engaged in at least 785 acts of federal wire fraud*" (Compl. ¶ 400) and that "[*u*]*pon information and belief, Franke engaged in thousands of additional acts of federal wire fraud. . . .*" (Compl. ¶ 406).

[16] *Kousisis v. United States*, 605 U.S. _____ (May 22, 2025).

cases the Tenth Circuit considers reliance as element of a RICO violation.[17]  Plaintiff has not shown he ever listened to, much less relied on any statement by, Franke.

Unable to show Franke harmed him, Plaintiff broadens his aperture to include all the alleged victims of Hildebrandt.  But Plaintiff applies the wrong test.  Plaintiff points to victims of Hildebrandt arguing that everyone harmed by Hildebrandt in general was also harmed by Franke's alleged specific acts of wire fraud.  Supreme Court and Tenth Circuit authority, however, require the court to identify the victims of the alleged *predicate acts*.[18]  The Supreme Court has made clear that "the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern…."[19] The Tenth Circuit evaluates whether the predicate acts are extensive enough to constitute a pattern, and as part of the extensiveness analysis, considers whether the number of victims of the predicate acts.[20]  Thus, in considering this factor, the question is whether there are victims of wire fraud, not victims of defective counseling methods.  Plaintiff argues hundreds of people have been harmed by Hildebrandt's teachings and claims there are 11 specific victims in the complaint.  The problem for Plaintiff is these are not *fraud* victims.  For example, Jessi Hildebrandt is the victim of physical abuse.[21] Adam Steed was the victim of Hildebrandt's defective counseling methods: "*We came there for marriage counseling, and she pulled us into her porn marathon*."[22] Again, not a fraud victim,

---

[17] *CGC Holding Co.*, 773 F.3d at 1088("[I]n cases arising from fraud, a plaintiff's ability to show a causal connection between defendant's misrepresentation and his or her injury will be predicated on plaintiff's alleged reliance on that misrepresentation.").
[18] *See Johnson v. Heath*, 56 F.4th 851, 860 (10th Cir. 2022); *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993).
[19] *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985).
[20] *Johnson v. Heath*, 56 F.4th at 860-61.
[21] Compl. ¶¶ 115-124.
[22] Compl. ¶ 132.

and most importantly for the substantive counts, not a victim of any fraud by Franke.  These victims of Hildebrandt's defective counseling methods may have various state law claims and regulatory remedies against Hildebrandt, (as Plaintiff has alleged), but they are not victims of fraud by Franke.  Despite Plaintiff's attempt to equate victims of defective counseling with wire fraud, Plaintiff has not identified any victims of Franke's alleged acts of wire fraud.

Second, the number of alleged predicate acts is minimal.  Plaintiff places much weight on the fact Plaintiff has alleged "*at least 298 acts of wire fraud*,"[23] but this catch-all allegation fails under Tenth Circuit precedent.  Tenth Circuit authority requires Plaintiff to allege the "who, what, where, when, and how" of the alleged fraud.[24]  Simply alleging in a conclusory manner that there are 298 instances of fraud fails this test.  "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement."[25]  The list of social media communications listed in Exhibit 1 is deficient because it does not identify any statement that can be analyzed through the who, what, where, when, and how test.  The court should not give it credit.

The remainder of the communications, for the reasons outlined in Franke's supporting memorandum, show only a limited number of isolated statements that not only do not constitute wire fraud, but fail to allege a pattern.

Third, the variety in the predicate acts is minimal.  In *Johnson v. Heath*, the Tenth Circuit considered that even if there were multiple acts of overcharging customers, "the underlying

---

[23] Compl. ¶ 404.
[24] *Clinton*, 63 F.4th at 1277.
[25] *Clinton*, 63 F.4th at 1275 (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)).

fraudulent conduct hardly varied."[26]  Likewise here, Franke's statements are all of the same type. Plaintiff relies on *Johnson v. Heath*, but the case supports Franke.  The plaintiff alleged the sellers of a gas station engaged in a "burn the station" scheme where they overcharged customers and then sold the station to plaintiff at an inflated price.  Plaintiff argued there were fifty racketeering acts including overcharging customers, and then the fraudulent sale to him.  The panel, however, determined that even if defendants routinely overcharged customers, there was no variety in the predicate acts because the "underlying fraudulent conduct hardly varied."[27] Thus, there were two categories of predicate acts in *Johnson*—the underlying overcharging of customer and the misrepresentation in connection with the sale.

Applying *Johnson* here, the abuse allegations are uniform in that they involve abuse of Franke's children and not others.  Franke did not abuse Plaintiff's children.  And unlike *Johnson*, which involved a false representation by defendant to plaintiff, Plaintiff has not alleged and cannot establish he was harmed by any specific communication or representation by Franke. Thus, the facts in this case, although serious, are similar to the lack of variety in *Johnson*.

<u>Fourth</u>, Plaintiff does not persuasively show distinct injury.  Plaintiff argues his injuries "caused Plaintiff unique harms," but Plaintiff lacks any specific facts to show he was harmed by Franke's conduct and representations.  He can't tie Franke's statements to his harm.  Plaintiff focuses on Franke's social media presence, but the complaint alleges the actual indoctrination

---

[26] 56 F.4th at 861.

[27] *Id.*

took place in "workshops and counseling sessions,"[28] and Plaintiff does not allege Franke was a participant in any session with him and Savage.

The Tenth Circuit has long held, and the Supreme Court recently affirmed, there is a direct causation requirement in RICO: "the compensable *injury* necessarily is the *harm* caused by predicate acts sufficiently related to constitute a pattern."[29]  And the Tenth Circuit has held:

> [I]n cases arising from fraud, a plaintiff's ability to show a causal connection between defendants' misrepresentation and his or her injury will be predicated on plaintiff's alleged reliance on that misrepresentation.  Put simply, causation is often lacking where plaintiffs cannot prove that they relied on defendants' alleged misconduct.[30]

Plaintiff has not plausibly alleged he was harmed by Franke.  He has, for example, not even alleged he heard any statement by Franke, and he certainly has not alleged sufficient reliance to meet the causation element.

Any general harm that Plaintiff experienced by separately contracting with Hildebrandt and paying for Hildebrandt's services and receiving defective services in return is also shared by others who paid for the same services.  The fact Plaintiff is the only person to file a federal lawsuit claiming his speculative[31] lost future earnings as a lawyer-to-be are Franke's fault does not make his injuries unique.

<u>Fifth</u>, Plaintiff has not made any headway in arguing complexity.  Plaintiff simply re-cites the number of social media posts and followers.  Plaintiff argues there was "extensive planning and management" but note how Plaintiff fails to allege any specific facts, and fails the who,

---

[28] Compl. ¶ 7.  "…Savage eagerly accepted Hildebrandt as her guide and joined the Enterprise," and Hildebrandt indoctrinated Savage. Compl. ¶ 12-13.
[29] *Medical Marijuana, Inc. v. Horn*, 144 S. Ct. 1454, 604 U.S. ____ (2025) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985)).
[30] *CGC Holding Co.*, 773 F.3d at 1089.
[31] See footnote 1 in Franke's Supporting Mem.

what, why, when, and how[32] of the alleged sophisticated management.  The complaint speaks only in terms of social medial output, but it tells us nothing about how Hildebrandt allegedly managed this enterprise using sophisticated methods.  There are no specific allegations showing how Hildebrandt and Franke allegedly used sophisticated management techniques; there are, for example, no allegations about meetings, communications, records, agents, and delegation of authority.  The claim that this was a well-managed and sophisticated scheme is not supported by the facts and, ultimately, lacks merit.

Finally, although Plaintiff is correct that a RICO claim may in some circumstances proceed with only one scheme, the variety of schemes has long been an important factor in the Tenth Circuit.  The lack of multiple schemes here provides further counsel against a finding of continuity.

For these reasons, the court should find Plaintiff's lengthy complaint fails to plausibly allege Franke engaged in a pattern of racketeering activity.

**B.  The Complaint Does Not State a Claim for Fraud**

**1.  Scheme or Artifice and Intent to Defraud**

A wire fraud claim made in a RICO case requires plausible non-conclusory arguments that Franke devised a scheme to defraud and acted with specific intent to defraud.[33]  A scheme or artifice to defraud, which is defined as conduct intended to deceive.[34]  To show intent to defraud,

---

[32] *Clinton*, 63 F.4th at 1277.

[33] Wire fraud requires showing actor "engaged in a scheme or artifice to defraud" and "did so with intent to defraud."  *U.S. v. Chavis*, 461 F.3d 1201, 1207 (10th Cir. 2006)

[34] TENT CIRCUIT PATTERN INSTRUCTION  § 2.75. Plaintiff is aware that alleging a scheme to defraud requires alleging false statements because he alleges Franke enticed victims to join the alleged enterprise "*by falsely representing…Hildebrandt's teachings . . . .*" Compl. ¶ 32.  Note

Plaintiff must show "material misrepresentations" or "knowledge of a false statement."[35] Plaintiff must make these allegations under a heightened particularity standard, showing the "who, what, where, when, and how."[36]

In this case the "how" piece is critical. To allege the how, Plaintiff must allege specific facts to show "*how [the statements] were allegedly fraudulent*."[37] This requires more than showing the statements were objectively, or turned out later to be, false. The facts must allow the fact finder to infer the statements were made with intent to deceive.[38]

Recognizing the need to allege intent to defraud when filing a fraud case, Plaintiff made an attempt. Plaintiff alleged Franke enticed victims "*by falsely representing…Hildebrandt's teachings….*"[39] But this allegation is conclusory. "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement."[40] The allegation is not supported by any facts to show Franke knowingly made false statements about Hildebrandt's methods. For example, Plaintiff cites the routine sign-off segment from a podcast, which states Hildebrandt's training will "*help you create joy in your life and in your*

---

that this claim is conclusory because it is not supported by any facts to show Franke was aware the statement was false when made.

[35] *Clinton,* 63 F.4th at 1282 (citations omitted).

[36] *Id.* at 1277.

[37] *Id.* (emphasis added).

[38] *Chavis*, 461 F.3d at 1207 ("It was a natural, compelling inference for the jury to find that Mr. Chavis caused the promotional materials to be distributed with no intent to fulfill the promises made."); *see Clinton,* 63 F.4th at 1277 (requiring material misrepresentations or knowledge of a false statement).

[39] Compl., ¶32.

[40] *Clinton,* 63 F.4th at 1275 (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)).

*relationships*,"[41] but Plaintiff fails to allege with specific facts and circumstances that Franke did not believe this statement when it was made such that it was deceptive.

Although Plaintiff attempts to identify specific communications, the communications do not show knowing misrepresentations or an intent to deceive or cheat someone.[42]  For example, Franke's statement (Instance 1) that she will be a "*safe place for anybody to come to*" and "*will offer my love to them*"[43] is a general statement about Franke; it is not as, as Paragraph 32 promises, a statement about Hildebrandt's methods or techniques.  The alleged purpose of the enterprise was to promote Hildebrandt's methods, but Franke's general statement that she will be safe and love people does not say whether or not a particular claim about a particular Hildebrandt method is true or false.

Plaintiff claims that Instance 2 is fraudulent because Franke says she disapproves of child abuse but eventually committed abuse.  This statement was made in February 2023; Plaintiff does not allege there was abuse occurring at this time.  According to the complaint, the abuse occurred during the summer and was discovered in August, 2023, at which point the children had "been isolated from each other for over a month."[44]  So, the timing of the statement does not show Franke knew it was false when made.  Moreover, even if the statement were made at the same time as the abuse, Franke's *opinion* about abuse in the abstract does not make a plausible claim of fraudulent intent because critically, at the time, Franke did not believe her actions were abuse.  As outlined by Plaintiff in Paragraph 107, for example, Franke believed her actions were

---

[41] Compl. ¶ 424 (emphasis added).
[42] Compl. ¶
[43] Instance 1, p. 17 (emphasis added).
[44] Compl. ¶ 90.

correct, justified, and necessary aspects of her adopted parenting beliefs.  Plaintiff has not alleged any facts to show Franke did not believe what she was saying in Paragraph 107.

Unable to present a persuasive argument that Franke engaged in a scheme to deceive, Plaintiff now falls back to recklessness.  But, Plaintiff fails to show Franke meets that standard as defined by the Tenth Circuit.  In the Tenth Circuit, reckless indifference in a wire fraud case means a representation made "without regard to [its] truthfulness."[45] "[I]ndifference to the truth of statements made to induce others to action amounts to fraudulent intent."[46]

But just like the allegations of direct intent, Plaintiff lacks allegations to plausibly allege Franke made statements without regard to their truth.  An example of recklessness might be representing a parcel of desert real estate has access to water, but the speaker having done nothing to evaluate whether the representation is true, and thus having no basis to make the representation.  In this case by contrast, the complaint shows that Franke firmly believed in Hildebrandt's methods.  The fact Franke was ultimately mistaken about Hildebrandt proves Franke made a grievous error which she regrets deeply and for which she is serving a prison sentence, but it does not prove Franke deliberately engaged in deception with Franke, which these claims require.  Plaintiff appears to believe it was sufficient that Franke was wrong about Hildebrandt, but there is no criminal liability for negligence.

Without real facts to support a recklessness theory, Plaintiff points to the circumstances, but the circumstances are insufficient.  Plaintiff alleges Franke tried to conceal her methods by deleting social media posts, but posting a statement to the public in the first place is the opposite

---

[45] *U.S. v. Prows*, 118 F.3d 686, 692 (10th Cir. 1997).
[46] *U.S. v. Themy*, 624 F.2d 963, 965 (10th Cir. 1980).

of concealment.  The fact Franke later deleted the posts after her arrest does little to show concealment at the relevant time, which is when Plaintiff was allegedly harmed.  And although Plaintiff claims Hildebrandt's business was lucrative for Plaintiff, there are no real facts to support this claim.  Paragraph 38 claims Hildebrandt derived millions, but there are no specific facts that Franke shared in a single dollar; it is unsupported and conclusory.  Paragraphs 73 and 74 state what Hildebrandt charges: "*ConneXions and Hildebrandt charge the following fees….*"  There is no allegation that Franke was ever paid by Hildebrandt.  The allegation is without factual basis.

Finally, unlike his allegations against Savage and Hildebrant,[47] Plaintiff does not claim Franke acted recklessly.

### 2.  The Complaint Does Not Allege Direct Causation

Franke's memorandum set forth the correct standard for causation in a RICO case.  The predicate offense must lead "directly" to the plaintiff's injuries.[48]  The Tenth Circuit and Supreme Court have held there must be a direct relation between the predicate acts and the harm to business or property.[49]  Rather than showing a direct relation, Plaintiff cites Ninth and Second Circuit cases and argues for a looser foreseeability standard.  Plaintiff even argues RICO causation is present "if the injury is **reasonably foreseeable**."[50]  Plaintiff argues it was foreseeable to Franke that Savage would harm her child.[51]

---

[47] Compl., ¶¶216, 217, 232, 276, 324, 372, 644
[48] *CGC Holding*, 773 at 1088; *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010)
[49] *Id.*
[50] Pl.'s Mem. in Opp'n to Def.'s Mot. Dismiss 23.
[51] "*It was foreseeable that if Franke taught her followers, including Savage, to inflict pain and violate the law, they would do so*."  Opposition, p. 24.  Plaintiff lacks facts to show Franke taught Savage to violate the law.

Far from embracing a flexible concept as Plaintiff represents, the Supreme Court in *Medical Marijuana v. Horn* emphasized RICO's longstanding requirement of a direct relationship between the conduct and the harm and rejected foreseeability:

> First and foremost is RICO's direct-relationship requirement. Time and again, we have reiterated that § 1964(c)'s "by reason of" language demands "some direct relation between the injury asserted and the injurious conduct alleged." **The key word is "direct"; foreseeability does not cut it.**[52]

*Medical Marijuana* is only the latest Supreme Court decision requiring direct causation, and rejecting attenuated theories like the one presented here.

In *Hemi Group, LLC v. City of New York*, the Court held the failure of a cigarette seller to file a report with the State of New York disclosing cigarette sales from New Mexico to New York residents so the sales could be taxed was not the direct cause of the state's lost cigarette tax revenue.[53]  Instead, "the conduct directly responsible for the City's harm was the customers' failure to pay their taxes."[54] The failure of the cigarette seller to notify the state was a cause in the chain of events, but it was "attenuated."[55] The court reasoned: "Because the City's theory of causation requires us to move well beyond the first step, that theory cannot meet RICO's direct relationship requirement."[56]

Applying this reasoning here, Plaintiff's harm is degree upon degree more attenuated than the link between predicate act and harm in *Hemi Group*.  Plaintiff claims Savage sought

---

[52] *Medical Marijuana, Inc. v. Horn*, 604 U.S. ___ (April 2, 2025) (citations omitted; emphasis added) ("Given the number of steps in Horn's theory and the multiple actors involved, this requirement may present an insurmountable obstacle in his case.").
[53] 559 U.S. 1, 11 (2010)
[54] *Id.*
[55] *Id.* at 10
[56] *Id.* at 10

counseling services from Hildebrandt in 2015.[57]  Then, Savage became a loyal associate of

Hildebrandt. [58]  Then, Hildebrandt exposed Savage to her methodology.[59]  Then, Savage began

to implement the methodology.[60]  Then, Hildebrandt and savage conspired to manufacture

marital problems.[61]  Then, Savage and Hildebrandt met individually weekly or bi-weekly.[62]

Then, Hildebrandt convinced Savage that Plaintiff was addicted to pornography and had his

computer scanned.[63]  Then, Savage restricted Plaintiff's access to his child.[64]  Then, Savage

convinced Plaintiff to work with a social worker under threat of divorce.[65]  Then, Savage abused

Plaintiff's child.[66]  Then, Plaintiff suffered $3,770 in lost wages during the custody trial.[67]  The

point is stated succinctly in the topic heading: "*Savage Implements Hildebrandt's Methodology

to Damage Plaintiff.*"[68]

Under *Hemi Group*, the harm Savage caused to Plaintiff and his child was caused by

Savage.  New York was harmed when its citizens did not pay tax and Plaintiff was harmed when

Savage harmed his marriage and child.  Like the cigarette seller (who knowingly sold cigarettes

in New York and failed to file requisite reports) whose actions were too attenuated, Franke's

peripheral involvement with social media is not the direct cause of Plaintiff's familial harm.  The

---

[57] Compl., ¶192
[58] Compl., 193, 12
[59] Compl., ¶194
[60] Compl., ¶194
[61] Compl., ¶197
[62] Compl., ¶204
[63] Comp., ¶¶222-223
[64] Compl., ¶234
[65] Compl., ¶259
[66] Compl., ¶283
[67] Compl., ¶592
[68] Compl., p. 39

complaint alleges no non-conclusory facts that Franke was the direct cause of any of his marital and familial problems. Plaintiff's causation theory fails under *Hemi Group*, *Medical Marijuana*, and *CGC Holding*. The abuse by Savage is not harm to Plaintiff's business or property directly caused by Franke. The court should apply the controlling precedents and dismiss.

### C. The Complaint Does Not Allege Intent to Join a Conspiracy Whose Aim Was Fraud

Franke's supporting memorandum sets forth the rules applicable to RICO conspiracy.[69] In addition, longstanding authority instructs that a person who does not know the enterprise is committing fraud cannot be guilty of conspiracy to commit fraud.[70]

To support his claim that Franke intended to join an enterprise whose aim was fraud, Plaintiff references paragraphs 2 and 407. Thes paragraphs are far from enough. Paragraph 2 is general and conclusory. The allegation Franke and Hildebrandt "*comprised an organized criminal enterprise*" is a pure conclusion without benefit of any specific supporting facts. Likewise, paragraph 407, alleged on information and belief, alleges Hildebrandt and Franke reached an agreement that each would perpetrate acts of wire fraud before they acted. Again, this is pure conclusion, Plaintiff alleges nothing more. When did Franke and Hildebrandt reach an agreement. To what specifically did they agree. The allegations in paragraphs 2 and 407 are not based on fact. The court should not let this RICO case move forward on these conclusory allegations.

Ultimately, all Plaintiff has shown is that Franke appeared on Hildebrandt's social media, but in the Tenth Circuit "[m]ere association" with a criminal actor "is insufficient to prove

---

[69] Supp. Mem. 21.
[70] *Chavis*, 461 F.3d at 1208.

participation in their conspiracy."[71] And of course Plaintiff himself was associated with Hildebrandt and participated in her courses.[72] So, association by itself is not enough, and the critical piece of evidence that would differentiate Plaintiff from Franke— that unlike Plaintiff Franke knew Hildebrandt was a fraud— is absent from the complaint. The sufficiency and plausibility standards demand more than this lengthy complaint provides. Dismissal is proper.

### D. Plaintiff Lacks Standing

To obtain standing in a RICO case, a plaintiff must show he has "been injured in his business or property by the conduct constituting the violation."[73] But Plaintiff has not shown with any non-conclusory allegations that he was harmed in his business or property by any act of Franke.

Because Franke did injure Plaintiff's business or property there is no substantive RICO violation. *Beck v. Prupis*, *Grider v. Texas Oil & Gas Corp.,* and *Edwards v. First Nat. Bank* control and require dismissal of the conspiracy claims. "The conspiracy claim falls[74] when the substantive claim based on 1962(c) is deficient."[75]

### CONCLUSION

The court should dismiss the complaint as to Franke.

DATED: June 27, 2025

        */s/ Sam Meziani*
        Sam Meziani
        *Attorney for Ruby Franke*

---

[71] *U.S. v. Fox*, 902 F.2d 1508, 1514 (10th Cir. 1990)
[72] Compl., ¶206
[73] *Tal*, 453 F.3d at 1254; Supp. Mem. 22.
[74] (sp?)
[75] *Edwards v. First National Bank*, 872 F.2d 347, 352 (10th Cir. 1989)

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of June, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Jonathan O. Hafen
Victoria R. Luman
Daniel J. Nelson
PARR BROWN GEE & LOVELESS
101 S. 200 E., Suite 700
Salt Lake City, Utah 84111
jhafen@parrbrown.com
vluman@parrbrown.com
djnelson@parrbrown.com
*Attorneys for Plaintiff*

LaShel Shaw
Caroline Anais Olsen
ZIMMERMAN BOOHER LLC
341 S. Main Street, 4th Floor
Salt Lake City, Utah 84111
lshaw@zbappeals.com
*Attorneys for Plaintiff*

Karl M. Tilleman
2435 E. Silverwood Drive
Phoenix, Arizona 85048
Karl.tilleman.law@gmail.com
*Attorneys for Plaintiff*

Adam C. Dunn
DUNN LAW FIRM
110 W. Tabernacle
St. George, Utah 84770
acdunn@dunnfirm.com
*Attorneys for Jodi Hildebrandt and Connexions Classroom, LLC*

Melinda K. Bowen
R. Scott Young
SPENCER FANE LLP
10 Exchange Place, 11th Floor
P.O. Box 45000
Salt Lake City, Utah 84145-5000
mbowen@spencerfane.com
rsyoung@spencerfane.com
*Attorneys for Michael Washburn*

*/s/ Sam Meziani*